NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KOSHY MATHAI,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2026-1041

---

Appeal from the United States Court of Federal Claims in No. 1:24-cv-01954-SSS, Judge Stephen S. Schwartz.

---

Decided: June 8, 2026

---

KOSHY MATHAI, Austin, TX, pro se.

TARA K. HOGAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before DYK and TARANTO, *Circuit Judges*, and MOORE, *District Judge*.[1]

PER CURIAM.

In 2020, Koshy Mathai began employment with the Department of Veterans Affairs (VA) as a physician specializing in pain management, and about two years later, he requested a retention bonus. VA denied the request. Dr. Mathai then filed this action in the United States Court of Federal Claims (Claims Court), alleging that VA's denial of a retention bonus, combined with an organizational change regarding the Pain Management Section of the VA facility at which he worked, effected a taking of his medical services labor without compensation, in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. The Claims Court dismissed the action for failure to state a claim. *Mathai v. United States*, No. 24-1954C, 2025 WL 2622178, at *1 (Fed. Cl. Sept. 11, 2025) (*Decision*). We now affirm.

I

Because the case was decided on a motion to dismiss, we accept for purposes of the appeal Dr. Mathai's allegations in his complaint, as amended, and documents deemed incorporated. Appointed to a VA physician position in 2019, Dr. Mathai began his service in the VA Central Texas Health Care System (Texas facility) in March 2020. Appx. 49.[2] Dr. Mathai's specialization was pain management. *Id.* Before beginning service, he discussed the terms and compensation of the position with several officials at VA. Appx. 28–30. Specifically, Dr. Mathai was informed by the

---

[1]    Honorable K. Michael Moore, District Judge, United States District Court for the Southern District of Florida, sitting by designation.

[2]    "Appx." refers to the appendix submitted with Dr. Mathai's informal opening brief.

Chief of Staff at the Texas facility that a retention bonus may be offered after two years of service. Appx. 29. Dr. Mathai acknowledged that VA did not guarantee the retention bonus. Appx. 29; *see* Appx. 35 (Dr. Mathai's contemporaneous notes stating that a retention bonus after the first two years of service was "likely but not promised"). Dr. Mathai signed the Recruitment Service Agreement, agreeing to work for VA for two years in exchange for a recruitment payment of $50,003, Appx. 48, and annual pay of $320,000, Appx. 39–42. The annual pay included (1) base pay under 38 U.S.C. § 7431(b), and (2) market pay under *id.* § 7431(c). Appx. 39–42; *see also* Appx. 26 (Dr. Mathai's acknowledgement that his pay is governed by statute).

In September 2020, VA made an organizational change, moving the Pain Management Section of the Texas facility from the Surgical Service Line to a new Whole Health Service Line. Appx. 57–58. Dr. Mathai opposed that change. Appx. 31. In February 2022, VA made another organizational change, moving the Pain Management Section to the Anesthesiology Department. Appx. 31, 75, 116.

In January 2022, as his two-year mark was approaching, Dr. Mathai requested a retention bonus and a market pay increase from VA. Appx. 64–65. Dr. Mathai also sent an email to the Chief of Staff asking several questions about his pay and bonuses, and the Chief of Staff responded that she "asked the [Whole Health] Service to fill out the request [form], as is customarily done," and indicated that she would "not be responding directly to [his] other [bonus-related] questions at this time." Appx. 63–64. VA then declined to offer Dr. Mathai a retention bonus. Appx. 27.

In 2024, Dr. Mathai filed suit in the Claims Court, seeking, under the Fifth Amendment, compensation for an allegedly uncompensated taking. *See* Appx. 8. After the

government timely filed a motion to dismiss, Dr. Mathai amended his complaint, alleging that what VA took was his "labor of providing Interventional Pain specialty." Appx. 26. Dr. Mathai reasoned that the denial of the retention incentive bonus and "repurposing of [his] labor" by the organizational changes established that VA engaged in a "cohesive pattern of action and inaction that functionally appropriated [his] labor." Appx. 26; *see* Appx. 33. Dr. Mathai explained that he was thus seeking compensation for his "lost earnings differentials valued at $9,100,000 and $2,785,000" from other "concrete job opportunities" that he could have taken instead of the VA position. Appx. 26. Dr. Mathai then made clear that he was not making a claim for "a Retention Incentive." Appx. 33. The government renewed its motion to dismiss, arguing that the amended complaint did not state a claim upon which relief may be granted.[3]

In September 2025, the Claims Court granted the motion and dismissed the action. *Decision*, at *1. The Claims Court reasoned that Dr. Mathai's "expectations about the terms and compensation of his employment . . . are not property and cannot be the subject of a claim for just compensation under the Takings Clause" as his compensation was "governed exclusively by statute" and his "prior

---

[3]    When Dr. Mathai then moved for leave to file under seal a sur-reply with exhibits, the Claims Court ordered him to show cause why such a filing should be permitted and eventually denied the motion. The Claims Court explained that Dr. Mathai's reasons for seeking to file under seal were "too generic to justify confidentiality" and further observed that many of his exhibits were also public records. *Decision*, at *1. The Claims Court permitted the motion to remain under seal but did not "consider[ ] the proposed sur-reply or its exhibits." *Id.*

expectations [about the terms of his employment] have no legal force" because such terms "are entirely contingent on the legal structure governing the appointment." *Id.* at \*2 (citing *Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004) (internal quotation marks omitted)).

The Claims Court entered a final judgment, and Dr. Mathai timely appealed. Appx. 4, 10. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

"Whether a taking under the Fifth Amendment has occurred is a question of law with factual underpinnings." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing *Alves v. United States*, 133 F.3d 1454, 1456 (Fed. Cir. 1998)). We review de novo the Claims Court's dismissal of a suit for failure to state a claim. *112 Genesee Street, LLC v. United States*, 166 F.4th 1017, 1028 (Fed. Cir. 2026). "We take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017). "To withstand a motion to dismiss under Rule 12(b)(6) of the [Claims Court], a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Frankel v. United State*s, 842 F.3d 1246, 1249 (Fed. Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Fifth Amendment requires the government to pay just compensation to an individual if his property was taken by the government for a public use. U.S. Const. amend. V. To determine if a taking under the Fifth Amendment has occurred, we first consider "whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking," and, if we "conclude[ ] that a cognizable property interest exists," then we "determine[ ] whether that property interest was 'taken.'" *Acceptance Insurance Companies, Inc. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009). We

agree with the Claims Court that both Dr. Mathai's expectation of a retention bonus from VA and his expectation of not being assigned particular duties associated with the organizational-chart change for the Pain Management Section are not cognizable property interests protected by the Fifth Amendment. *Decision*, at \*1–2; *see* Appx. 24–33. This determination is sufficient to affirm the dismissal of Dr. Mathai's case.

To establish a cognizable interest, Dr. Mathai must identify a source of law independent of the Fifth Amendment, "such as state, federal, or common law," that gives rise to "the requisite property rights." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005) (internal citation and quotation marks omitted). Here, like the federal-employee appellants in *Adams v. United States*, Dr. Mathai "served by appointment" and had not "entered into any separate agreement with the Government, express or implied" regarding his compensation or employment terms, so his compensation and employment terms "were governed exclusively by statute, not contract." 391 F.3d at 1221. No source of law gives Dr. Mathai a property right protected by the Takings Clause in either of the two respects he invokes for this action.

Dr. Mathai contends that his "labor (medical services)" was taken by VA as a result of VA's decision not to offer Dr. Mathai a retention bonus, following his alleged discussions with VA, prior to his employment, that he may be eligible for such a bonus. *See* Appx. 25, 29, 35, 92. But Dr. Mathai, like the *Adams* appellants, possessed only a "unilateral expectation to receive" a retention bonus. 391 F.3d at 1221. Congress established that the annual pay of a physician employed by VA is composed of both base pay and market pay, 38 U.S.C. § 7431(a), with the latter concerning pay "intended to reflect the recruitment and retention needs for the specialty or assignment . . . of a particular physician . . . in a facility of [VA]," *id.* § 7431(c)(2). VA has also adopted certain standards relevant here. Appx. 31–32, 76

(referring to VA Handbook 5007/58).  It is undisputed that VA Handbook 5007/58 authorizes VA officials to exercise discretion in determining whether to award an employee a retention bonus.  Appx. 31–32, 76.  Thus, the statute and VA standards do not give physicians a right to a retention bonus.  *Cf.* Appellant Informal Opening Br. at 45.  That is enough to defeat Dr. Mathai's claim of a Takings Clause property right in a retention bonus, even without relying on the full scope of the precedent rejecting Takings Clause protection for a federal employee's asserted specific statutory right to be paid.  *See Adams*, 391 F.3d at 1225.

Dr. Mathai also argues that VA's shifting of his working group to a different place in the organizational structure was a taking because it resulted in VA "push[ing] an agenda of Addictionology practice," which Dr. Mathai found "incongruent" with his specialty.  Appx. 26; *see* Appellant Informal Opening Br. at 53–55.  He ties this contention to the allegation that VA assigned him (or asked him to provide) addiction-related treatment, "a task outside [his] hired-for specialty need" when it moved the Pain Management Section to the Whole Health Service Line.  Appx. 33; *see also* Appx. 26–27, 31.  We see no plausible basis for a takings claim in this allegation.

VA, in its capacity as an employer, may exercise managerial discretion to meet the needs of the agency by, for instance, reassigning employees or even eliminating employees' positions through a reduction in force.  *See Frey v. Department of Labor*, 359 F.3d 1355, 1357, 1360 (Fed. Cir. 2004); *Cross v. Department of Transportation*, 127 F.3d 1443, 1447 (Fed. Cir. 1997).  Dr. Mathai cites no law or regulation that would exempt federal employees like him from providing particular medical services assigned by VA in its managerial discretion.  Appellant Informal Opening Br. at 30–31; *see id.* at 53–56.  It makes no difference that the managerial decision was allegedly "premeditated."  *Id.* at 14, 31, 55.  In this respect, Dr. Mathai lacks the "essential" property right necessary to state a claim cognizable under

the Takings Clause. *See College Saving Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 673 (1999) (internal citation and quotation marks omitted).

### III

We have considered Dr. Mathai's remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm the judgment of the Claims Court.

The parties shall bear their own costs.

**AFFIRMED**